FILED
2014 Sep-17 PM 04:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

MARK E. HILL, )
)
Plaintiff, )
)
vs. ) CASE NO. 7:13-cv-01238-JEO
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
)
Defendant. )

**MEMORANDUM OPINION**

Plaintiff Mark E. Hill brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income. (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference dated January 14, 2013. The parties have consented to the jurisdiction of this court for disposition of the matter. (Doc. 11). *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be reversed and remanded.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff was 43 years old at the time of the administrative hearing before the

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

Administrative Law Judge ("ALJ"). (R. 33).[2] He has an eleventh grade education and past relevant work as a golf course laborer. (R. 21, 45-46).

In May 1997, Plaintiff sustained a compound right ankle fracture in a motor vehicle accident. (R. 230, 391). The fracture required repeat surgeries. (R. 230-34). Plaintiff ultimately developed an infection requiring debridement and hardware removal in July 2003. (R. 391). The wound required additional debridement in December 2003 and April 2004. (R. 236, 391).

Plaintiff also underwent surgery for a herniated disc in October 2000. (R. 349). He underwent re-exploration surgery and a microlaminectomy in January 2001. (R. 340).

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on August 17, 2010, alleging disability beginning August 15, 2003, due to right leg pain and ankle pain. (R. 14, 98-109, 146). His claim was denied initially. (R. 51-54). Plaintiff then requested an administrative hearing, which was held on April 16, 2012. (R. 29-50). Plaintiff was represented by counsel at the hearing. (R. 31). The ALJ concluded that the Plaintiff was not disabled. (R. 23).

Plaintiff requested the Appeals Council to review the ALJ's decision. (R. 7). The Appeals Council declined Plaintiff's request for review on May 3, 2013. (R. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. Plaintiff then filed this action for judicial review under 42 U.S.C. § 405(g), asserting that the findings of the Commissioner are not based upon substantial evidence and that improper legal standards were applied. (Doc. 1).

---

[2]References to "R. __" are to the page number of the administrative record, which is encompassed within Docs. 8-1 through 8-11.

## II. STANDARD OF REVIEW[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability,

---

[3]In general, the legal standards applied are the same whether a claimant seeks disability insurance benefits or supplemental security income. However, separate, parallel statutes and regulations exist for disability insurance benefits and supplemental security income claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner][5];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the

---

[4]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

[5]20 C.F.R. Pt. 404, Subpt. P, App. 1. This subpart is also referred to as the "Listing of Impairments" or "the Listings."

[Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## IV. DISCUSSION

### A. Findings of the ALJ

After consideration of the entire record before him and application of the sequential evaluation process, the ALJ made the following findings:

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2005, and that he had not engaged in substantial gainful activity since August 15, 2003, the alleged onset date of his disability. (R. 17).

The ALJ found that Plaintiff has the severe impairments of status post back and right ankle surgery, but that he does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17-18).

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a range of sedentary work, subject to the following limitations: he can never climb ladders, ropes, or scaffolds; he can never work around hazards; he should avoid concentrated exposure to extreme cold; and he can never operate foot controls with his right lower extremity.[6] (R. 18). The ALJ further determined that Plaintiff should be allowed to elevate his right lower extremity

---

[6]Sedentary work is work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567 (a).

to the level of a footstool as needed throughout the day. (*Id.*)

The ALJ found that Plaintiff has past relevant work as a golf course laborer, but is unable to return to his past work. (R. 21). Based on the testimony of a vocational expert, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are a significant number of jobs in the national economy that Plaintiff can perform. (R. 21-22, 46-47). The ALJ thus concluded that Plaintiff is not disabled. (R. 23).

**B. Analysis**

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence. (Doc. 13 at 6). He asserts that in the absence of a medical source opinion ("MSO"), there is no substantial evidence to support the RFC finding "particularly with regard to the use of a footstool," which he contends "would not accommodate the more significant limitations the ALJ maintained he was assessing and would not provide relief based on Plaintiff's testimony."[7] (Doc. 13 at 10). He also argues that the ALJ did not conduct a function-by-function analysis of his work-related abilities, did not consider his obesity, did not seek clarification from the consultative physician who examined him, and did not utilize a medical expert. (*Id*. at 6-10).

After reviewing the record, the court agrees that there is insufficient evidence in the record to support the ALJ's determination that allowing Plaintiff to elevate his right lower extremity to footstool level would sufficiently alleviate the pain and swelling in his ankle and leg to enable him to perform sedentary work. The court thus concludes that the case should be

[7]Medical source opinions are "statements from physicians or psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your [the claimant's] impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

remanded for further proceedings and, if necessary, further development of the record with respect to that issue.[8]

**1. Residual Functional Capacity**

An RFC is an "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis ... [which] means 8 hours a day for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184 (July 2, 1996). It "involves determining the claimant's ability to do work in spite of his [or her] impairments in consideration of all relevant evidence." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). It is the responsibility of the Commissioner to determine a claimant's RFC. *See Robinson v. Astrue*, 3605 F. App'x 993, 999 (11th Cir. 2010) (stating that "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors").

The ALJ has a duty to develop the record fully and fairly. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). However, an ALJ is not required to seek a doctor's assessment of a claimant's RFC; to do so would "confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96–5p, 1996 WL 374183 (July 2, 1996). Likewise, the ALJ does not have to order a consultative examination or medical expert testimony unless the record contains insufficient evidence from which the ALJ can make an informed decision. *See Doughty v. Apfel*,

[8]Because the court finds that there is insufficient evidence to support the ALJ's finding with respect to the use of a footstool, the court does not address the other arguments advanced by Plaintiff except to the extent they bear on the sufficiency of the evidence before the ALJ.

245 F.3d 1274, 1281 (11th Cir. 2001); 20 C.F.R. § 404.1519a.[9]

**2. Insufficient evidence supports the ALJ's RFC's finding that Plaintiff can perform sedentary work if allowed to raise his right lower extremity to the level of a footstool**

As noted, the ALJ found that Plaintiff has the RFC to perform a range of sedentary work with the restriction, among others, that he be allowed "to elevate his right lower extremity to the level of a foot stool as needed throughout the day." (R. 18). In making this finding, the ALJ referenced Plaintiff's testimony that he "occasionally is unable to stand more than 15-20 minutes and requires elevating his leg at times to reduce swelling and pain." (R. 19). Plaintiff's specific testimony at the hearing was as follows:

Q. (ALJ) ... What about walking?

A. (Plaintiff) That I have a little trouble with ... I do. I have a little – sometimes it's to the point where my ankle is so swollen that I really have a hard time walking. Sometimes I can't stand up more than 15 to 20 minutes at a time.

---

[9]The regulations provide:

(b) *Situations that may require a consultative examination*. We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:

(1) The additional evidence needed is not contained in the records of your medical sources;

(2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;

(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or

(4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

I have to sit down and get off my ankle, prop it up, let the swelling go down in it, and then that's why I'm talking about how earlier I told you I do a lot of sitting around, and that's simply because of that. I have to keep my leg up. The more I keep my leg up elevated, the less pain I have in it, and the more I can tolerate it.

. . .

Q. Do you prop it up on kind of a footstool or what?

A. Well, I have a couch, and I usually put two pillows on the end of it, and I put my leg up on the couch.

. . .

Q. (Plaintiff's attorney) Mr. Hill, how much time do you spend lying on the couch with your leg elevated on the two pillows? Let's say from eight in the morning until five in the evening?

A. I would probably say five hours. I try not to do it more than I have to.

. . .

Q. Do you have problems with sitting? And when I mean sitting, I mean sitting in a straight back chair with your legs hanging down.

A. Yes, sir. Like right now, I could really stand to get up and move. I'm trying to –

Q. So, probably about what 25 minutes or so?

A. Yes, sir. I have a problem with my leg going numb. My leg goes numb on me if I sit too long.

Q. That's what I was going to ask. When does it go numb?

A. If I get in one certain position, it's probably 20 minutes of sitting and my leg starts tingling and then it'll go numb on me. I'll have to get up and move.

(R. 41-44).

Although the ALJ determined that, in general, Plaintiff's statements concerning his impairments and their impact on his ability to work were "not entirely credible" (R. 19), the ALJ

gave "some weight" to Plaintiff's testimony of swelling in his ankle and relatively consistent pain. (R. 20). It is also apparent that the ALJ gave some credibility to Plaintiff's testimony about the need to elevate his leg to relieve the pain and swelling, because he included in his RFC assessment the express limitation that Plaintiff be allowed to elevate his right lower extremity to the level of a footstool. Put another way, inherent in the ALJ's RFC finding is the recognition that Plaintiff experiences pain and swelling in his ankle and leg and needs to be able to alleviate the pain and swelling in order to perform sedentary work. The ALJ determined that allowing Plaintiff to elevate his leg to the level of a footstool would provide sufficient relief to enable him to work.

The record, however, contains no medical or other evidence that such an accommodation would sufficiently reduce the pain and swelling in Plaintiff's right ankle and leg to allow him to work. As noted above, Plaintiff did not testify that he elevates his leg on a footstool to reduce the pain and swelling; rather, he testified that he usually puts two pillows on the end of a couch and then places his leg on the two pillows, which would elevate his leg to a much higher level than propping it up on a footstool. When questioned by his attorney, Plaintiff testified that he usually spends five hours a day lying on the couch with his leg elevated in this manner. Even assuming that the ALJ did not find this testimony to be entirely credible, there is no corresponding testimony or other evidence in the record to the effect that Plaintiff need only elevate his leg to a footstool level to obtain relief from his ankle pain and swelling. In this regard, the court notes that Dr. A. Philip Badewa, the consultative physician who examined Plaintiff in September 2010, confirmed that Plaintiff is suffering from "pain in joint, ankle and foot," but did not address the measures Plaintiff should take to alleviate the pain. (*See* R. 312-14). He certainly did not opine

on the height to which Plaintiff would need to elevate his leg to obtain relief from the pain.

The height to which Plaintiff needs to be able to elevate his leg is critical to the ultimate issue of whether Plaintiff is disabled. Again, the ALJ found that Plaintiff has the RFC to perform a range of sedentary work but only if he can elevate his right lower extremity to the level of a footstool as needed throughout the day. Based on the testimony of the vocational expert, the ALJ further found that there are a significant number of sedentary, unskilled jobs Plaintiff can perform considering his age, education, work experience, and RFC. In making this finding, the ALJ stated that the vocational expert "testified that based upon his experience[,] elevating the lower extremity would not preclude" performance of the jobs the vocational expert had identified. (R. 22). The vocational expert's testimony, however, was not that clear.

At the hearing, the ALJ first asked the vocational expert if there was any work that could be performed by an individual with the same age, education, and work background as Plaintiff who was limited to sedentary work and should never climb ladders, ropes, or scaffolds, should never work around hazards, should avoid concentrated exposure to extreme cold, and should never operate foot controls with his right lower extremity. (R. 46). The vocational expert identified the jobs of medical productions worker, table worker, and optical goods assembler. (R. 46-47). The ALJ then modified his hypothetical as follows:

Q. (ALJ) Okay. What if in addition to the limitations in the first hypothetical this individual required the ability to elevate his right lower extremity to footstool level as needed throughout the day? Would that have any impact on the work that you've identified?

A. (Vocational Expert) If we refer to a footstool, we're talking 12 inches or lower, is that correct, Your Honor?

Q. That's correct.

A. That would not affect those jobs, Your Honor.

Q. Now, what if this hypothetical individual had the ability or required the ability to elevate his right lower extremity to waist high or higher for more than half the day? Would there be any work for that individual?

A. **No, Your Honor.**

(R. 47) (emphasis added). Due to the nature of the ALJ's questions, it is unclear whether the vocational expert was of the opinion that performance of the jobs he had identified would not be precluded no matter how high the individual needed to elevate his leg during the day or for how long. He testified that the jobs would not be affected if the individual required the ability to elevate his right lower extremity to footstool level "as needed throughout the day," but that there would be no work for the individual if he required the ability to elevate his lower extremity to waist high or higher "for more than half the day." (*Id.*) Based on this testimony, it is unclear whether there would be work for an individual who needed to elevate his lower extremity to waist high or higher but did not need to do so for more than half the day. If the individual required the ability to elevate his lower extremity to waist high or higher "as needed throughout the day," would he be precluded from performing the jobs identified by the vocational expert? It is impossible to tell from the vocational expert's testimony.

In sum, the ALJ's RFC finding is based on the (unstated) premise that allowing Plaintiff to elevate his right lower extremity to footstool level would sufficiently reduce the pain and swelling in his ankle and leg to enable him to perform sedentary work. After a thorough review of the record, the court concludes that there is insufficient evidence in the record to make that determination. Plaintiff did not testify that elevating his leg on a footstool would provide him with the relief he needs, and no treating or consultative physician has so opined. Although the

court recognizes that an ALJ is not required to obtain a physician's assessment of a claimant's RFC or to order medical expert testimony before making an RFC finding, the ALJ does have a duty to develop a full and fair record and there must be sufficient evidence in the record as a whole for the ALJ to make a determination. Here, Plaintiff testified that he is able to reduce the pain and swelling in his ankle and leg by lying on a couch with his leg propped up on two pillows. He said that he probably spends five hours a day with his leg elevated in this manner. There is no other evidence in the record regarding the relief Plaintiff is able to obtain from elevating his leg. If the ALJ did not find Plaintiff's testimony on this issue to be wholly or even partially credible, he could not simply assume that Plaintiff would get the same relief by elevating his leg to just footstool level. There needed to be evidence in the record to support such a finding, whether it came from the medical records, the testimony of a treating or consultative physician, or other credible source. Because there is no such evidence in the record, the case is due to be remanded for further development of the record, which may require further examination by the consultative physician and further testimony from the vocational expert.

## V. CONCLUSION

For the reasons set forth above, the undersigned finds that the decision of the Commissioner is due to be **REVERSED and REMANDED** for further proceedings consistent with this opinion. An appropriate order will be entered separately.

**DONE**, this the17th day of September, 2014.

John E. Ott

**JOHN E. OTT**
Chief United States Magistrate Judge